UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
INTERNATIONAL UNION OF PAINTERS AND
ALLIED TRADES, AFL-CIO; LAURA FOSTER;
and DENNIS FARRANTO,

                        Plaintiffs,                    MEMORANDUM AND ORDER
                                                                                09-CV-04358 (RRM) (RLM)
   - against -

LOCAL 8A-28A, INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES, AFL-CIO,

                        Defendant.
----------------------------------------------------------------X
MAUSKOPF, United States District Judge.

On September 16, 2009, members of the labor union known as Local 8A-28A ("Local 8A-28A" or "the Local") voted in a nationwide referendum on whether to disaffiliate from their parent union, the International Union of Painters and Allied Trades ("IUPAT" or "the International"). Aggregating all eligible votes cast, a majority of the Local's members voted *against* disaffiliation. Despite that result, certain officers of the Local, including its President, insisted that Local 8A-28A had in fact voted *in favor of* disaffiliation from IUPAT, arriving at this conclusion by claiming that the votes of a segment of the Local's membership – the employees of the Chicago Transit Authority ("CTA") – were to be counted separately and not included in the tally of all votes cast. Local 8A-28A's President announced that the Local had disaffiliated from IUPAT, and thereafter, the Local refused to recognize IUPAT as its governing body or be bound by the IUPAT Constitution.

Plaintiffs commenced this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 101 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411. Plaintiffs seek declarations "that the

members of Local 8A-28A voted ... against disaffiliating from the International" and "that Local 8A-28A remains affiliated with the International," together with an injunction requiring "Local 8A-28A to abide by the September 16, 2009 membership referendum resulting in a majority vote against disaffiliation ... ." (Compl. at 7.)

Shortly after their commencement of this action, Plaintiffs moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The parties and the Court agreed that the preliminary injunction motion should be consolidated with a trial on the merits pursuant to Rule 65(a)(2). After the parties conducted some limited discovery, Plaintiffs' claims were tried before this Court in a non-jury proceeding. The parties submitted post-trial memoranda, together with proposed findings of fact and conclusions of law. Based on the preponderance of the evidence and on the arguments presented, this Court sets forth the following Findings of Fact and Conclusions of Law,[1] pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, and finds that Local 8A-28A's actions with respect to the counting of ballots from the September 16, 2009 disaffiliation referendum violated Section 101(a)(1) of the LMRDA, the IUPAT Constitution, and Local 8A-28A's By-Laws[2]

---

[1] To the extent that any of the Court's findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall also be considered findings. *See, e.g., Miller v. Fenton*, 474 U.S. 104, 113-14 (1985) (noting the occasional difficulty of differentiating findings of fact from conclusions of law).

[2] Because the Court finds in favor of Plaintiffs on their claim regarding the counting of ballots after the disaffiliation vote, the Court does not reach Plaintiffs' claim regarding certain alleged improprieties during the voting process in Arizona. Plaintiffs have repeatedly asked the Court to address the Arizona voting claim *only* in the event that they were unsuccessful on their ballot counting claim. (*See, e.g.*, Docket Entry No. 21 ("Pls.' Proposed Findings") at 18.) Moreover, as Defendant correctly observes, the two categories of claims would lead to inconsistent forms of relief – success on the Arizona voting claim would seem to call for a new election, while success on the ballot counting claim would call for a declaration that the outcome of the election was the opposite of that claimed by Defendant Local 8A-28A. In any event, the Court notes that none of the relief sought in the Complaint appears to pertain to the Plaintiffs' claim regarding the Arizona vote.

# FINDINGS OF FACT[3]

Upon due consideration of the developed factual record, including the testimony of witnesses and examination of exhibits introduced into evidence, this Court sets forth the following factual findings based on the credible evidence presented at trial:

1. Plaintiff IUPAT is a labor organization with principal offices in Washington, D.C.

2. Defendant Local 8A-28A is a labor organization with principal offices in Long Island City, New York.

3. Plaintiff Laura Foster ("Foster") was, as of September 16, 2009, both a member in good standing of Local 8A-28A and its Vice President. Foster is an employee of the CTA.

4. Plaintiff Dennis Farranto ("Farranto") was, as of September 16, 2009, a member in good standing of Local 8A-28A.

5. Local 8A-28A represents employees for purposes of collective bargaining with employers in locations throughout the country, including Arizona, Illinois, New York, Ohio, Texas, and the Washington, D.C. area.

6. Among the members of Local 8A-28A are between 50 and 60 employees of the CTA. The remainder of Local 8A-28A's membership is composed of private employees.

7. As of September 16, 2009, Local 8A-28A was the collective bargaining representative for a group of CTA employees that included all of the CTA-employed members of Local 8A-28A. The record does not indicate whether there are other members of the CTA bargaining unit represented by Local 8A-28A who are *not* themselves members of Local 8A-28A – however, under the Illinois Labor Relations Act ("ILRA"), a labor union recognized as the representative of a given collective bargaining unit may represent all members of that unit, including employees who do not belong to the union.

8. As of September 16, 2009, Local 8A-28A was affiliated with IUPAT, as set forth in the Local 8A-28A By-Laws, which state that (a) the provisions of the IUPAT Constitution are deemed incorporated into the Local's By-Laws, and (b) the Local's By-Laws are subject and subordinate to the provisions of the IUPAT Constitution.

---

[3] The following facts are drawn from the evidence presented at trial, as summarized in the parties' respective proposed findings of fact and conclusions of law. Unless otherwise noted, the facts are undisputed.

9. The Local 8A-28A By-Laws provide that all powers of the Local not specifically entrusted to particular officers or expressly prohibited by the By-Laws or IUPAT Constitution shall be "reserved to the membership" of Local 8A-28A.

10. The IUPAT Constitution provides that any proposed amendment or change to the By-Laws of an affiliated local union "shall be submitted for a membership vote," and that "a majority vote of the members in good standing" present and voting shall decide the issue.

11. During an August 19, 2009 meeting of the Executive Board of Local 8A-28A, the board members present voted to call a special membership meeting on September 16, 2009, for the purpose of voting on whether Local 8A-28A should disaffiliate from IUPAT.

12. On or about August 28, 2009, Local 8A-28A President Hector Lopez ("Lopez") caused a notice of the September 16, 2009 special membership meeting to be mailed to the membership of Local 8A-28A.

13. Local 8A-28A contracted with the American Arbitration Association ("AAA") to have the AAA administer the September 16, 2009 disaffiliation vote.

14. On September 16, 2009, voting on the disaffiliation referendum was conducted at locations in various states. The sole question presented to the voters was: "Should Local 8A-28A disaffiliate from the International Union of Painters and Allied Trades and become an independent union?" Voters were given the option of voting "Yes" or "No" on the question presented.

15. Voting on the referendum was open to all members in good standing of Local 8A-28A. Local 8A-28A representatives provided AAA staff in each voting location with lists of members in good standing for their respective locations. The International Constitution and Local By-Laws make no distinction between public and private sector members.

16. Other than in Chicago, Illinois, all votes were collected in a single ballot box.

17. In Chicago, Illinois, votes were collected in two ballot boxes – one ballot box was used to collect the votes of Local 8A-28A members employed by the CTA, and another ballot box was used to collect the votes of all other Local 8A-28A members. This procedure was used at the request of Local 8A-28A.

18. On September 16, 2009, the AAA issued two separate Certifications of Results for the disaffiliation vote – one for the votes of Local 8A-28A members employed by the CTA, and another for the votes of all other Local 8A-28A members nationwide. This procedure was also used at the request of Local 8A-28A.

19. On September 30, 2009, after resolving certain challenged ballots, the AAA issued a revised Certification of Results for the votes of all non-CTA members of Local 8A-28A.

20. Among the non-CTA voters, 351 members of Local 8A-28A voted in favor of disaffiliation, and 329 members voted against disaffiliation. Among the Local 8A-28A members employed by the CTA, none voted in favor of disaffiliation, and 48 members voted against disaffiliation.

21. Plaintiff Foster voted against disaffiliation. The record does not indicate whether Plaintiff Farranto voted.

22. Had Local 8A-28A counted the votes of all its members nationwide in a single tally, including the votes of members employed by CTA, the outcome would have been a vote *against* disaffiliation, with a total of 351 votes in favor of disaffiliation and 377 against disaffiliation.

23. Local 8A-28A concluded that the election resulted in disaffiliation of Local 8A-28A from IUPAT, and that the CTA employees were no longer members of Local 8A-28A, but would rather be "independently represented" by IUPAT.

24. There is no evidence of any rule or provision in the IUPAT Constitution, the Local 8A-28A By-Laws, or any other governing document of the union, to suggest that the votes of public and private employees may be treated differently in any type of election or referendum held within Local 8A-28A.

25. On October 9, 2009, Plaintiffs commenced this action against Local 8A-28A.

## CONCLUSIONS OF LAW

### A. Jurisdiction and Standing

The Court has jurisdiction over Plaintiffs' LMRA and LMRDA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185, 411, and has jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. 1367. Local 8A-28A's assertion that "Plaintiffs have failed to invoke the Court's supplemental jurisdiction," see Docket Entry No. 22 ("Def.'s Proposed Findings") ¶ 40, is incorrect, see Compl. ¶ 2 ("Plaintiffs also invoke this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367"), and thus, the Court has jurisdiction over all of Plaintiffs' claims.

5

As all parties acknowledge, Plaintiffs Foster and Farranto have standing to assert claims for alleged breaches by Local 8A-28A of the IUPAT Constitution and Local 8A-28A's By-Laws. *See Woodell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991); *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988). In addition, as all parties acknowledge, Foster and Farranto have standing to assert claims for alleged equal rights violations under Section 101(a)(1) of the LMRDA. *See* 29 U.S.C. § 412. Finally, as all parties acknowledge, Plaintiff IUPAT has standing to assert a claim under the LMRA based on Local 8A-28A's alleged violation of the IUPAT Constitution. *See United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334*, 452 U.S. 615, 621 (1981); *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 793 (2d Cir. 1994).

### B. Plaintiffs Foster and Farranto's LMRDA Claims

Section 101 of the LMRDA sets forth a "Bill of Rights" for members of labor organizations. That section opens, under the subject heading "Equal rights," with the following language:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

That the foregoing is the first substantive provision of the LMRDA is by no means a coincidence. There is no right more fundamental to promoting responsibility and ethical conduct in the administration of labor organizations than the equal right of all of its members to vote in elections and referenda, and to have their votes counted equally. Accordingly, the essence of Section 101 "is the command not to discriminate against members and classes of members in

6

their right to vote and nominate." *Fritsch v. Dist. Council 9, Bhd. of Painters, Decorators & Paper Hangers of Am.*, 493 F.2d 1061, 1063 (2d Cir. 1974). *See also Calhoon v. Harvey*, 379 U.S. 134, 138 (1964).

Local 8A-28A's refusal to include in the disaffiliation vote the votes of its CTA-employed members in good standing is a clear infringement of the equal rights of those members to participate in a referendum submitted for a plenary membership vote. As the undisputed facts clearly demonstrate, Local 8A-28A conducted two separate votes on the disaffiliation question – one among its CTA-employed members, and another among the remainder of its members – and unilaterally *and unlawfully* determined that it would be the non-CTA vote alone that decided the question of disaffiliation for the entire union. This approach, for which there is no support in the Local's By-Laws or the International's Constitution, deprived the CTA-employed members of Local 8A-28A of a right they were guaranteed under the International's Constitution, the Local's By-Laws, and the LMRDA – the right to vote in a union referendum and to have their votes counted equally with all other members.

Indeed, contrary to Local 8A-28A's insistence that its CTA-employed members *were* afforded the right to vote (albeit with their votes counted separately), the Local's argument ignores the reality that, on the actual question presented to the membership – whether *Local 8A-28A* should disaffiliate from IUPAT – only the votes of non-CTA union members were counted. This plainly constitutes the type of discrimination prohibited by Section 101. *Calhoon*, 379 U.S. at 139. *See also Members for a Better Union v. Bevona*, 152 F.3d 58, 63 (2d Cir. 1998) (Section

101(a) is "a command that members and classes of members shall not be discriminated against in their right to nominate and vote.").[4]

Local 8A-28A's principal defense to the LMRDA claim rests on a strained – and, ultimately, fundamentally flawed – interpretation of certain provisions of Illinois Labor Law and attendant regulations concerning the collective bargaining representatives of public employees employed in that state. According to the Defendant's own interpretation of Illinois law, were the Local's affiliation to have changed as a result of the disaffiliation vote – that is if, under the facts of this case, the members had voted to disaffiliate – Local 8A-28A, as the representative of a collective bargaining unit of CTA employees, would be required to file an "Amended Certification" petition with the Illinois Labor Relations Board. (Def.'s Proposed Findings ¶ 61.) For that petition to succeed, Local 8A-28A contends, it would have to demonstrate that "the affected employees [had] approve[d] the affiliation change by a secret ballot vote." (*Id.* (citation omitted).) In other words, according to Local 8A-28A's own interpretation, Illinois law precludes the recognition of a change in union affiliation affecting the CTA bargaining unit unless the CTA employees themselves approved the change through an appropriate vote. This form of "extra" protection for its public employees, the Local argues, motivated its decision to

---

[4] Local 8A-28A also refers generally to two Second Circuit decisions that rejected Section 101 claims – *Amirault v. Shaughnessy*, 749 F.2d 140 (2d Cir. 1984), and *Fritsch* – without making any effort to compare the facts of those cases with the facts presented here, or, in fact, to examine the reasoning employed by the Court of Appeals in those decisions. Neither case involved a union's refusal to count the votes of an entire category of its members. Indeed, the Court of Appeals in *Fritsch* took care to observe that the plaintiffs in that case had alleged neither that they had "been totally denied the right to vote" nor "that the votes of some members count[ed] more than the votes of others ... ." 493 F.2d at 1063. Those facts stand in sharp contrast to the facts of this case, where only the votes of Local 8A-28A's non-CTA members were counted on the question of whether the Local would disaffiliate from the International.

segregate and count separately the votes of its CTA members. These defenses to the Plaintiffs' LMRDA claim must fail.

First, Local 8A-28A's position is self-contradictory. On one hand, the very basis for the Local's decision to count the CTA votes separately was its contention that there can be no change in the affiliation of the CTA employees' collective bargaining representative unless that change is approved by the CTA employees themselves. On the other hand, however, Local 8A-28A contends that it "views the results of the election to mean that Local 8A-28A is disaffiliated from the IUPAT, and that *the CTA unit is no longer represented by Local 8A-28A, but is rather independently represented by IUPAT.*" (*Id.* ¶ 32.) These two positions cannot be reconciled. The members of the CTA bargaining unit were never asked whether they wished to terminate their representation by Local 8A-28A in the event that the Local disaffiliated from the International, much less whether they wished to be "independently represented by IUPAT." *Cf. Amirault v. Shaughnessy*, 749 F.2d 140 (2d Cir. 1984) (where the votes of the majority of all members of a federation of thirteen local unions determined whether the federation would affiliate with an international union, but each local union would have the option of leaving the federation if the majority of the members of that local union voted against disaffiliation). Therefore, were the Court to accept Local 8A-28A's interpretation of the requirements of Illinois state law, it would have to reject the Local's "view" on the outcome of the disaffiliation vote.

Second, even under Local 8A-28A's own interpretation of Illinois law, its refusal to count the votes of its CTA-employed members along with those of the rest of the voters in the disaffiliation referendum was unjustified. As Plaintiffs correctly observe, none of the provisions of Illinois law relied upon by Local 8A-28A supports the premise that public employees may not vote along with their fellow union members on a question of union governance such as

affiliation. To the extent that Local 8A-28A was concerned with the possibility of an overall vote resulting in a change in affiliation against the wishes of the CTA collective bargaining unit that would trigger the provisions of Illinois law, those issues could have been addressed without the need to disenfranchise the CTA-employed members of Local 8A-28A in the internal union vote on disaffiliation. While the LMRDA may permit *the segregation* of CTA votes to assess whether the outcome of the vote triggered the need to comply with Illinois law, the LMRDA clearly prohibits *the exclusion* of the CTA members' votes in determining the overall outcome of the election.

In the end, however, the notion that Illinois law might have raised additional procedural requirements as a result of a change in union affiliation involving the CTA-employed members of Local 8A-28A is based on a hypothetical premise and not on the facts of this vote. Indeed, the members of Local 8A-28A – including those employed by the CTA – voted *against* the proposed change in affiliation. As such, whatever concerns the Local's leaders may have had about the status of the CTA-employed members under Illinois law, those concerns were never implicated. In spite of the various rationales offered for its actions, Local 8A-28A cannot escape this simple fact: A majority of *all* of the members in good standing nationwide who participated in the election – both CTA and non-CTA combined -- voted *against* disaffiliation.

Finally, Local 8A-28A's purported distinction between the votes of its publicly and privately employed members is wholly unsupported by any by-law, constitutional provision, or other governing instrument of the organization. Although Section 101 of the LMRDA sets forth a command that remains "subject to reasonable rules and regulations in [a covered] organization's constitution and bylaws," Local 8A-28A can point to no such provision. That

omission underscores the insufficiency of Local 8A-28A's answer to what has been shown to be outright discrimination between the votes of two classes of its members.

For the foregoing reasons, the Court finds that Local 8A-28A's refusal to count the votes of its CTA-employed members in the general membership vote on disaffiliation was a violation of Section 101(a)(1) of the LMRDA. The evidence at trial established by a preponderance of the evidence that Plaintiff Foster was a CTA-employed member in good standing of Local 8A-28A who voted "No" in the union's disaffiliation referendum but whose vote was not counted. Accordingly, Plaintiff Foster has proven by a preponderance of the evidence a violation of her rights under the LMRDA, and actual injury resulting therefrom. By the same token, however, Plaintiff Farranto has failed to prove his LMRDA claim. Assuming *arguendo* that Farranto's claim was otherwise viable, the Plaintiffs' failure to produce admissible evidence that Farranto voted against disaffiliation dooms his claim for lack of a redressable injury, and Farranto's claim is accordingly dismissed. *See Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009).

### C. Breach of the IUPAT Constitution and Local 8A-28A By-Laws

Section 135 of the International Constitution requires that a change in the by-laws of an affiliated local union be "submitted for a membership vote," further specifying that "a majority vote of the members in good standing" shall decide such a question. Local 8A-28A does not contest the fact that disaffiliation from IUPAT would represent a change in the Local's By-Laws. For the reasons set forth in the above discussion with respect to Plaintiff's LMRDA claim, the Court finds that Local 8A-28A's failure to abide by the majority vote against disaffiliation constitutes a breach of the IUPAT Constitution.

In addition, that same conduct constitutes a violation of the Local 8A-28A By-Laws, which expressly incorporate the terms of the IUPAT Constitution and subordinate their own

provisions to those of the International Constitution. Moreover, as Plaintiffs observe, the Local's By-Laws reserve all powers not enumerated therein "to the membership" of Local 8A-28A. Since the mechanism for disaffiliation is not addressed in either the IUPAT Constitution or the Local's By-Laws, Plaintiffs correctly conclude based on a reading of both documents that questions concerning affiliation are to be decided by the union membership as a whole. Accordingly, the Court finds that Plaintiffs Foster and IUPAT have proven their claims asserting that Local 8A-28A breached the IUPAT Constitution and, in the case of Foster, the additional claim for breach of the Local's By-Laws.

**D.      Remedy**

Plaintiffs seek both declaratory and permanent injunctive relief. Specifically, Plaintiffs seek declarations "that the members of Local 8A-28A voted ... against disaffiliating from the International" and "that Local 8A-28A remains affiliated with the International." (Compl. at 7.) Plaintiffs also seek an injunction requiring "Local 8A-28A to abide by the September 16, 2009 membership referendum resulting in a majority vote against disaffiliation ... ." (*Id.*)

To obtain declaratory relief, a party must demonstrate that such relief either "will serve a useful purpose in clarifying and settling the legal relations in issue," or "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734 (2d Cir. 1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)). The Declaratory Judgement Act "does not by itself confer subject matter jurisdiction on the federal courts ... [r]ather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgement." *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006). In this case, there is an independent basis for jurisdiction -- federal question

jurisdiction pursuant to 28 U.S.C. § 1331, in conjunction with both the LMRA and the LMRDA. *325 Bleecker, Inc. v. Local Union No. 747, United Bhd. of Carpenters & Joiners of Am.*, 500 F. Supp. 2d 110, 123-24 (N.D.N.Y. 2007).

Here, Plaintiffs have clearly established that a declaratory judgment is appropriate to afford relief from the uncertainty, insecurity, and controversy surrounding the results of the September 16, 2009 membership referendum, as well as to clarify the status of Local 8A-28A's affiliation with IUPAT. For these reasons, Plaintiffs are entitled to a declaration that the members of Local 8A-28A voted, by a majority vote, in the September 16, 2009 referendum against disaffiliating from the International and that Local 8A-28A remains affiliated with the International and remains bound by the International Constitution.

Next, to obtain a permanent injunction, a party must first demonstrate *actual* success on the merits – as opposed to the *likelihood* of success on the merits that is required for a preliminary injunction. *See Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Moreover, the party seeking a permanent injunction "must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989). Irreparable harm is an injury so serious that a monetary award cannot adequately compensate the injured party. *See Citibank N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985). Such a showing requires more than a mere possibility of harm; the law requires a movant to demonstrate a likelihood of irreparable harm absent the equitable relief requested. *JSG Trading Corp. v. Tray-Wrap, Inc.*, 817 F.2d 75, 79 (2d Cir. 1990).

As discussed above, this Court has concluded after trial that Plaintiffs have prevailed by a preponderance of the evidence on the merits of this action; accordingly, the first element

13

necessary to support permanent injunctive relief is satisfied. Next, monetary damages will not adequately compensate Plaintiffs in this case. Specifically, the deprivation of Foster's right to vote on a basis of equality with all other members of the union, as well as Local 8A-28A's breach of the IUPAT Constitution, cannot be remedied through money damages. Therefore, Plaintiffs are entitled to an injunction requiring Local 8A-28A to abide by the results of the September 16, 2009 membership referendum counting equally in the final tally of results the votes of all of its members in good standing at the time of the vote, both CTA and non-CTA members alike.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Foster has proven her LMRDA claim against Defendant Local 8A-28A, and Plaintiffs Foster and IUPAT have proven their claims based on breaches of the International's Constitution and the Local's By-Laws. Accordingly, Plaintiffs are entitled to a judgment declaring that the members in good standing of Local 8A-28A voted, by a majority vote, in the September 16, 2009 referendum against disaffiliating from the International and that, as of the vote of September 16, 2009, Local 8A-28A remained affiliated with the International and remained bound by the International Constitution. Furthermore, Local 8A-28A is hereby ORDERED to abide by the September 16, 2009 membership referendum which resulted in a majority vote against disaffiliation from IUPAT, and to abide by its By-Laws and the International Constitution. Plaintiff Farranto's claims are dismissed. Plaintiffs are hereby ORDERED to submit for this Court's review a proposed Order and Judgment consistent with the foregoing.

SO ORDERED.

Dated: Brooklyn, New York
      September 21, 2010

_____
ROSLYNN R. MAUSKOPF
United States District Judge